AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
для the
Southern District of Texas

JUN 2 2 2015

, Clerk of Court

United States of America
v.

Byron Arthur Piper

*Defendant(s)*

Case No. M-15-1008-M

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __December 2014__ in the county of __Starr__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 666(a)(1)(A) | Theft or bribery concerning programs receiving federal funds. |

This criminal complaint is based on these facts:

Please see attached Affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

Tully Minoski, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 06/22/2015

*Judge's signature*

City and state: McAllen, Texas

Hon. Dorina Ramos, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Tully Minoski, being duly sworn, hereby depose and state:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI), and have been so employed since July of 2012. I am currently assigned to work public corruption, including investigations of theft of federal funds, within the San Antonio, Texas Division.

2. Since joining the FBI, I have received law enforcement training in the investigation of criminal violations of federal law within the jurisdiction of the FBI, and I have received specialized training and gained experience in arrest procedures, search warrant applications, the execution of search and seizures, and various other criminal laws and procedures.

3. I make this affidavit in support of the issuance of a complaint and arrest warrant for subject Byron Arthur Piper for a violation of 18 U.S.C. § 666(a)(1)(A).

4. The statements contained in this affidavit are based upon my investigation, information provided by other law enforcement officers, and on my own experience and training as a Special Agent of the FBI. Because the affidavit is being submitted for the limited purpose of securing a complaint, I have not included each and every fact known to me concerning the investigation. I have set forth only the facts that I believe are necessary to establish probable cause that Piper violated 18 U.S.C. § 666(a)(1)(A).

5. Piper was the Chief of Police of the Rio Grande City Police Department (RGCPD) from approximately March of 2005 to approximately December of 2014.

6. In the years 2009, 2010, 2011, 2012, 2013, and 2014, the RGCPD received federal program grants in excess of $10,000 from the United States Department of Homeland Security, administered through the Texas Department of Public Safety and Starr County. One of these grants came from a program called Operation Stonegarden (OPSG), whose funds were intended to pay overtime to local law enforcement officers in order to help secure the borders of the United States. After working 86 hours of regular shift work in a two-week period, RGCPD officers could work overtime for and receive payment from OPSG.

7. In or about October 2014, the FBI received information that Piper may have been submitting time sheets reflecting that he had completed hours of work for OPSG that he never actually worked. Subsequent investigation revealed that Piper had, in fact, submitted many false time sheets to collect overtime payments from OPSG to which he was not entitled.

8. On December 11, 15, 16, and 17, 2014, I, along with other Special Agents of the FBI and/or the FBI's Mobile Surveillance Team (MST), conducted surveillance of Piper during hours that he represented were OPSG overtime hours (and for which he ultimately received compensation from OPSG). During that time, Piper appeared to do little, if any, actual police work. He drove his personal vehicle, rather than an official vehicle as required by OPSG; he stayed several hours at home; he spent several hours eating meals at various restaurants; and he completed a number of personal errands.

9. On January 23, 2015, I interviewed Piper at the FBI office in McAllen, Texas. Piper voluntarily agreed to the interview and drove himself to and from the FBI office. During the interview, Piper admitted that he had been filing false time and attendance sheets to fraudulently collect monies from OPSG for the last four or five years. He stated that instead of working OPSG, he would run errands. He stated that he knew that what he did was wrong and illegal.

10. On February 25, 2015, I again interviewed Piper at the FBI office in McAllen, Texas. Piper voluntarily agreed to the interview and drove himself to and from the FBI office. At that time, he provided me with the following written, signed statement:

    My name is Byron A. Piper. I am a retired police officer from the Rio Grande City Police Department. I was employed as the Chief of Police for 9 years and 9 months.

    In reference to the Stone Garden project, I did not work seventy percent of the time, as I wrote on my time sheet.

    I did it out of being lazy and stupidity.

    I am very, very, sorry for my actions. It is not only another stain on law enforcement but I am also hurting my family and embarrassing them.

    The seventy percent referenced above was from the the [sic] last five years, but I can't remember the shifts of whether I was working.

11. On May 26, 2015, Piper made a sworn statement, consistent with his prior two statements, affirming that he did not work about seventy percent of the overtime OPSG hours that he had submitted on his time and attendance sheets and for which he had received payment. He also stated, under oath, that his actions made him guilty of a crime.

12. From 2009 through 2014, Piper received $44,107.97 from OPSG in overtime pay and benefits.